Lauren Jill Marcus (N.J. Bar No. 030012009)
**LITTLER MENDELSON, P.C.**
One Newark Center, 8th Floor
Newark, NJ  07102
973.848.4700
Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHRISTINA CINELLI and GREGORY McCONNELL, on behalf of themselves and all others similarly situated, | Civil Action No. 1:14-cv-00548-RMB-KMW |
| Plaintiffs, | |
| vs. | *Electronically Filed* |
| P.B. SCHOOL OF BEAUTY CULTURE, INC., (d/b/a "PB COSMETOLOGY EDUCATION CENTRE" and also d/b/a "PB COSMETOLOGY STUDENT SALON"); and COLLEEN M. CONNELLY, | |
| Defendants. | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

On the Brief:
   *William P. McLane*
   *Lauren J. Marcus*

**Table of Contents**

**Page**

I.   PRELIMINARY STATEMENT ................................................................ 1

II.  PROCEDURAL HISTORY AND STATEMENT OF FACTS ................... 2

    A.   The Parties .................................................................................... 2

    B.   Applicable Laws and Regulations ................................................ 3

        1.   School Requirements ........................................................... 3

        2.   Student Requirements for Obtaining License ...................... 4

        3.   Student Permits .................................................................... 5

    C.   Plaintiffs' Allegations ................................................................... 5

III. LEGAL ARGUMENT ........................................................................... 7

    A.   The Standard for a Motion to Dismiss .......................................... 7

    B.   Plaintiffs' Claims Fail Because They Have Not Pleaded Facts Sufficient to Establish that They are Employees Rather than Students. ...................... 9

        1.   Plaintiffs cannot establish they are employees under the FLSA based on precedential case law. .................................... 10

        2.   Plaintiffs are not employees based on factors set forth by the DOL that determine employment relationships. ................. 12

    C.   Plaintiffs' NJWHL Claims Must be Dismissed ........................... 18

        1.   Plaintiffs' claims under the NJWHL fail because New Jersey law defines an "employee." ................................................. 18

        2.   Plaintiffs' State law claims fail because there is no private cause of action. ..................................................................... 19

    D.   Plaintiffs' Claims as to Ms. Hogan Must be Dismissed ............... 19

IV.  CONCLUSION .................................................................................... 21

**Table of Authorities**

**Page**

**Cases**

*Bamigbade v. State Farm Mut. Auto. Ins. Co.*
   391 Fed. Appx. 131 (3d Cir. 2010) ............................................................ 9

*Banco Popular v. Ghandi*
   184 N.J. 161 (2003) .................................................................................. 10

*Blair v. Wills*
   420 F.3d 823 (8th Cir. 2005) .................................................................... 18

*Bobilin v. Board of Educ., State of Hawaii*
   403 F. Supp. 1095 (D. Haw. 1975), ................................................... 12, 13

*Chugh v. W. Inventory Servs., Inc.*
   333 F. Supp. 2d 285 (D.N.J. 2004) ............................................................ 2

*Dawson v. Frias*
   397 Fed. Appx. 739 (3d Cir. 2010) ............................................................ 9

*Dole v. Haulaway Inc.*
   723 F. Supp. 274 (D.N.J. 1989) ............................................................... 22

*Donovan v. Grim Hotel Co.*
   747 F.2d 966 (5th Cir. 1984)) .................................................................. 22

*Fleisher v. Standard Ins. Co.*
   2011 U.S. Dist. LEXIS 46756 (D.N.J. May 2, 2011) ................................. 9

*Fowler v. UPMC Shadyside*
   578 F.3d 203 (3d Cir. 2009) ............................................................. 8, 9, 15

*Guenzel v. Mount Olive Bd. of Educ.*
   2011 U.S. Dist. LEXIS 132102 (D.N.J. Nov. 16, 2011) ........................... 11

*In re Bayside Prison Litig.*
   190 F. Supp. 2d 755 (D.N.J. 2002) ............................................................ 3

*In re Burlington Coat Factory Secs. Litig.*
   114 F.3d 1410 (3d Cir. 1997) ................................................................... 10

*In re Morgan Stanley Smith Barney, LLC Wage & Hour Litig.*
   2013 U.S. Dist. LEXIS 171194 (D.N.J. Dec. 4, 2013) ............................. 10

ii.

## Table of Authorities
(continued)

Page

*Johnson v. Thyng*
  369 Fed. Appx. 144 (D.N.H. 2010) ........................................................ 3

*Kaplan v. Code Blue Billing & Coding, Inc.*
  504 Fed. Appx. 831 (11th Cir. 2013) ................................................... 18

*Kennilworth Partners L.P v. Cedant Corp.*
  59 F. Supp. 2d 417 (D.N.J. 1999) ......................................................... 8

*Lane v. Carolina Beauty Systems, Inc.*
  1992 U.S. Dist. LEXIS 15338 (M.D. North Car. July 2, 1992)................. 12

*Lum v. Bank of Am.*
  361 F.3d 217 (3d Cir.), *cert. denied,* 543 U.S. 918 (2004) ....................... 10

*Maradiaga v. A. Duie Pyle*
  2012 U.S. Dist. LEXIS 103487 (D.N.J. July 25, 2012)........................... 23

*Nami v. Fauver*
  82 F.3d 63 (3d Cir. 1996)...................................................................... 8

*Pension Benefit Guar. Corp. v. White Consol. Indust., Inc.*
  998 F.2d 1192 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994) ........... 10

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*
  168 N.J. 255 (N.J. 2001) ..................................................................... 21

*Riordan v. Kempiners*
  831 F.2d 690 (7th Cir. 1987)) .............................................................. 22

*Rutherford Food Corp. v. McComb*
  331 U.S. 722 (1947)............................................................................ 19

*Sandom v. Travelers Mortg. Servs., Inc.*
  752 F. Supp. 1240 (D.N.J. 1990) ......................................................... 22

*Shakib v. Back Bay Restaurant Group, Inc.*
  2011 U.S. Dist. LEXIS 112614 (D.N.J. Sept. 30, 2011) ......................... 11

*Solis v. Laurelbrook Sanitarium and School, Inc.*
  642 F.3d 518 (6th Cir. 2011)........................................... 11, 14, 16, 19

## Table of Authorities
### (continued)

Page

*Thompson v. Real Estate Mortg. Network, Inc.*
   2011 U.S. Dist. LEXIS 149774 (D.N.J. Dec. 30, 2011) ...................................... 22, 23

*Tony & Susan Alamo Found. v. Sec'y of Labor*
   471 U.S. 290 (1985) ............................................................................. 14

*Ulrich v. Alaska Airlines, Inc.*
   2009 U.S. LEXIS 10104 (W.D. Wa. Feb. 9, 2009) ...................................... 17

*Velez v. Sanchez*
   693 F.3d 308 (2d Cir. 2012)................................................................. 15

*Walling v. Portland Terminal Co.*
   330 U.S. 148 (1947) ......................................................................... 11, 12

*Wang v. The Hearst Corp.*
   293 F.R.D. 489 (S.D.N.Y. May 8, 2013) ............................................... 14

*White v. Williams*
   179 F. Supp. 2d 405 (D.N.J. 2002). .................................................... 8, 10

*Woods v. Wills*
   400 F.Supp.2d 1145 (E.D. Mo. 2005)................................................. 18

## Statutes

29 U.S.C. § 203(d) ..................................................................................... 20
29 U.S.C. § 203(e)(1)............................................................................. 10, 20
29 U.S.C. § 203(g) ..................................................................................... 10
29 U.S.C. §§ 206 ......................................................................................... 7
N.J.S.A. § 45:1-25................................................................................. 3, 19
N.J.S.A. § 45:5B-1, *et seq* ..................................................................... 3, 5
N.J.S.A. § 45:5B-17 ................................................................................... 5
N.J.S.A. § 45:5B-2 ..................................................................................... 3
N.J.S.A. § 45:5B-25. ................................................................................... 5
N.J.S.A. § 45:5B-3 ..................................................................... 4, 5, 6, 18
N.J.S.A. § 45:5B-4 ..................................................................................... 3

iv.

**Table of Authorities**
(continued)

Page

N.J.S.A. § 45:5B-6 ................................................................................................ 3

N.J.S.A. § 45:5B-7 ............................................................................................... 4, 5

**Rules**

Fed. R. Civ. P. 12(a)(4). ....................................................................................... 2

**Regulations**

N.J.A.C. § 13:28-1.1 ............................................................................................. 5

N.J.A.C. § 13:28-6.1 ............................................................................................. 3

N.J.A.C. § 13:28-6.23(a), (b) ................................................................................ 4

N.J.A.C. § 13:28-6.27 ........................................................................................ 4, 18

N.J.A.C. § 13:28-6.29 ....................................................................................... 1, 5, 6

Firmwide:126095784.6 080160.1000

v.

## I.     PRELIMINARY STATEMENT

Having apparently exhausted the pool of actual employers to sue for alleged FLSA violations, plaintiffs' counsel now seeks to expand the definition of employee to include students enrolled at for-profit educational institutions. Their theory is absurd and contradicts the very purpose of the statutes on which plaintiffs rely. There is absolutely no basis, statutory or otherwise, to find that students enrolled in clinical courses, heavily regulated by state law, can be classified as employees of the very institution that provides them with vocational education and training.

Defendant P.B. School of Beauty Culture, Inc. (the "School") is an accredited cosmetology and hairstylist school, which educates and trains students in accordance with the rules and regulations of the State of New Jersey. Students pay tuition, purchase materials, and matriculate in classes to earn credits towards their cosmetology or hairstylist license.[1] One of the many statutory requirements students must meet to obtain their cosmetology license is the completion of 857 hours[2] of practical course education or clinical work. To ensure compliance with this requirement, the School maintains a clinical salon where students may style wigs, cut hair on mannequins, or provide services to customers at highly discounted rates meant to cover the cost of supplies and overhead. In accordance with State regulations, the School must, and does, ensure the students are under direct supervision while studying in the clinic, that an instructor remains responsible for their clinical activities, and that students are assisted when performing clinical activities on customers. Time spent in the School's clinic counts towards the students' statutory hour requirement, which students must satisfy in order to earn their cosmetology license.

---

[1] While the School offers programs for cosmetologists, manicurists, makeup artists and barbers, for purposes of this motion only, we assume plaintiffs studied cosmetology.
[2] N.J.A.C. 13:28-6.29. The regulations were amended in 2012, changing this requirement to 849 hours of practical course education.

Plaintiffs, two former students, bring this action alleging that the time they spent in the School's clinic was not for New Jersey State-required educational purposes, but was actually work that requires compensation. Plaintiffs' Complaint must be dismissed as a matter of law because plaintiffs were not employees of the School, but were students and, like students everywhere, they are not entitled to compensation for attending classes or participating in clinical activities.

There is absolutely no support for plaintiffs' assertion that individuals are entitled to compensation for time spent performing "school work" and engaging in clinical activities required for their cosmetology certifications. The School's clinic operates for the benefit of the School's senior students and allows them to earn hours in clinical practice as required by the State of New Jersey. Therefore, plaintiffs' claims under the FLSA and NJWHL fail because they have not pleaded any facts sufficient to support the wild notion that as students they were actually "employees" and entitled to compensation.

## II.   PROCEDURAL HISTORY AND STATEMENT OF FACTS[3]

### A.   The Parties

The School is a licensed school of cosmetology, located in Gloucester City, New Jersey. (Complaint, ¶ 11; see also Exhibit A).[4] Defendant Colleen Hogan ("Ms. Hogan") is part-owner of the family-owned and operated School and acts as its Director. (Complaint, ¶ 12).

---

[3] For purposes of this Motion only, defendants rely on the facts alleged in the Complaint. Defendants, however, reserve the right to file an Answer denying each and every claim and allegation in the Complaint once their current Motion to Dismiss has been decided and in accordance with Fed. R. Civ. P. 12(a)(4).

[4] Defendants request that the Court consider the documents attached to the Certification of William P. McLane in considering this motion and without converting it into a motion for summary judgment. *See Chugh v. W. Inventory Servs., Inc.*, 333 F. Supp. 2d 285, 289 (D.N.J. 2004) ("[I]n the Third Circuit, such conversion [to a motion pursuant to Fed. R. Civ. Pro. 56] is at the discretion of the court where the matters outside the pleadings consist only of: (1) matters attached to the complaint; (2) matters incorporated into the pleadings by reference; (3) matters of public record; and (4) matters integral to or upon which plaintiff's claim is based." (*citing In re Bayside Prison Litig.*, 190 F. Supp. 2d 755 (D.N.J. 2002), *abrogated in part* as stated in *Johnson v. Thyng*, 369 Fed. Appx. 144 (D.N.H. 2010)). Further, the Court may take judicial notice of these documents.

2

Plaintiffs are former students of the School who attended the School in 2011 and 2012. (Complaint, ¶¶ 9, 10).

**B.     Applicable Laws and Regulations**

As a licensed school of cosmetology, the School is subject to New Jersey's Cosmetology and Hairstyling Act of 1984 (the "Act"), N.J.S.A. § 45:5B-1, *et seq.* The Act created the New Jersey State Board of Cosmetology and Hairstyling (the "Board"), which falls within the Division of Consumer Affairs. N.J.S.A. § 45:5B-4. The Board's purpose is, *inter alia,* to: administer, coordinate and enforce the Act; protect the general public and registered students at licensed schools from "unsafe, fraudulent and deceptive practices;" [and] ensure students receive reliable instruction. N.J.S.A. § 45:5B-2. In order to effectuate its purpose, the Board shall: review applications; write exams for license applicants; issue and renew individual's licenses; issue student permits to senior students; suspend or revoke licenses; review and approve the curriculum of licensed schools; and direct investigations of licensed schools. *See* N.J.S.A. § 45:5B-6. Both the Board and the New Jersey Attorney General have the authority to bring an action for a violation of the Act or the regulations. N.J.S.A. § 45:1-25. Anyone who violates the Act may be subject to a civil penalty of not more than $10,000 for a first violation and no more than $20,000 for each subsequent violation. N.J.S.A. § 45:1-25(a).

**1.     School Requirements**

Licensed schools must comply with the Act and rules and regulations promulgated by the Board. N.J.A.C. § 13:28-6.1. "Any school violating any provision of [the Act] shall be subject to disciplinary action by the Board. *Id.* Schools and school clinics must maintain a minimum of one licensed teacher for every 25 students, and the teachers must "devote their entire time during school hours to the proper instruction of students and shall not engage in private or public practice of cosmetology. . .." N.J.A.C. § 13:28-6.23(a), (b).

3

Schools may perform clinical work, provided certain rules and regulations are followed. *See* N.J.A.C. § 13:28-6.27. A visible sign must be posted, stating "SERVICES DONE HERE BY SENIOR STUDENTS ONLY." N.J.A.C. § 13:28-6.27(a). Students may not practice cosmetology or hairstyling on any members of the public, except for clinical work performed on willing participants and in accordance with the Act. N.J.A.C. § 13:28-6.27(b). Moreover, the person receiving treatment at a student clinic must be made aware that they are receiving services from a student and that the teacher is in charge and responsible. N.J.A.C. § 13:28-6.27(c). An instructor must at all times be present and responsible, although teachers cannot perform any services or receive compensation for services rendered in school clinics. N.J.A.C. § 13:28-6.27(g), (h).

While schools may charge for services rendered by senior students with student permits, they may only charge a "fee which shall be calculated to recoup only the cost of materials used in the performance of those services." N.J.S.A. § 45:5B-3(h).

   2.   Student Requirements for Obtaining License

The Act generally prohibits individuals from engaging in the practice of cosmetology without first obtaining a license from the Board. N.J.S.A. § 45:5B-7. Individuals applying to obtain cosmetology-hairstyling licenses must meet the following statutory requirements: successfully complete high school; successfully complete a cosmetology and hairstyling course, which consists of either 1,200 hours of instruction at a licensed school or completion of a program at a public school approved by the New Jersey Board of Education to offer a vocational program in cosmetology and hairstyling. N.J.S.A. § 45:5B-17. Further, of those 1,200 hours[5], a

---

[5] The requisite number of clock hours is dependent upon the course of study. For example, individuals studying for a beautician license must complete 1,200 hours of study; barber students must complete 900 hours; skin care specialists 600 hours and manicurists 300 hours. For purposes of this motion only, we assume plaintiffs were studying for cosmetology and hairstylist licenses, which require 1,200 hours of study. *See* N.J.A.C. § 13:28-1.1.

minimum of 857 hours must consist of "practical instruction," in order for students to satisfy the curriculum and qualify for a license. N.J.A.C. § 13:28-6.29.

      3.    <u>Student Permits</u>

Once a student completes 600 hours of cosmetology and hairstyling training, they may apply to the Board for a student permit, which remains valid only during the period that the individual is enrolled as a student at the licensed school. N.J.S.A. § 45:5B-25. A "student permit" is defined by the Act as "a permit issued to a senior student which enables him to practice cosmetology and hairstyling, beauty culture, barbering, manicuring or skin care specialty, as appropriate, based on the course of instruction in which the student is enrolled, in a school clinic or shop while a registered student at a licensed school of cosmetology and hairstyling or enrolled in an approved vocational training program." N.J.S.A. § 45:5B-3. The student permit is an exception to the above referenced rule, which prohibits the unlicensed practice of cosmetology and hairstyling. Senior students with student permits may render cosmetology and hairstyling services "provided that those services are rendered in a school clinic or licensed shop during hours that the student does not have scheduled classes." N.J.S.A. § 45:5B-7(f).

**C.    <u>Plaintiffs' Allegations</u>**

The School is a for-profit educational institute operated in Gloucester City, New Jersey. (Complaint, ¶ 1). The School is a licensed cosmetology and hairstylist educational center and, therefore, subject to the rules and regulations set forth above. *See, generally,* N.J.S.A. § 45:5B-1, *et seq;* N.J.A.C. §§ 13:28, 13:45C). The School provides students with education and training which ultimately allows them to apply for and obtain a cosmetology license. The School receives tuition from students in exchange for educational services and training. (Complaint, ¶¶ 42(a), 45). As part of the educational services provided to the students, the School operates a clinic in

which students may gain the practical experience, as required by State statute, to obtain their license. (*See* Complaint ¶ 42(b)).

In accordance with New Jersey law, the School must provide students with the opportunity to accumulate 857 credits of practical experience. *See* N.J.A.C. § 13:28-6.29. Senior students (individuals with 600 hours completed and with the proper permit) may perform services on members of the public, as provided for by State law. *Id.* Plaintiffs contend the School required them to spend 900 hours performing clinical work on customers.[6] (Complaint, ¶¶ 29–31). Plaintiffs further contend that, in order to work in the clinic, the School requires they purchase a "kit" of materials, which they must use when providing services to the public at the clinic.[7] (Complaint, ¶¶ 49, 50).

Plaintiffs contend that the School uses students in the clinic in order to generate a profit.[8] (Complaint, ¶ 51). In accordance with State rules, the School expressly advertises that "[a]ll work performed by Senior Students. . .." (Complaint ¶ 58). Members of the public who receive services in the clinic are charged a small fee, in accordance with State law. N.J.S.A. § 45:5B-3(h). For example, the School advertises prices of $10 for a haircut and $8 for the application of makeup.[9] (Complaint ¶ 47). The amounts charged to members of the public are "lower than the cost typically charged by other salon businesses." (Complaint ¶ 60). In fact, the law mandates

---

[6] This allegation is completely implausible. First, not all practical credits are earned in the clinic, and even fewer are earned performing services on customers. Second, students must complete 1200 clock hours in order to graduate, and cannot perform any work in the clinic until they complete 600 clock hours. Therefore, at most, plaintiffs could spend 600 hours in the clinic, many of which are spent working on mannequins and in the classroom preparing for the State exam.

[7] The "kit" to which plaintiffs refer, contains textbooks, mannequins, a blow dryer, curling irons, flat irons, an artificial nail kit and various tools (shears, combs, clippers and razors), which are required for all cosmetologists. Plaintiffs are not reimbursed for this kit (as college students are not reimbursed for textbooks and lab equipment), but plaintiffs take the kit with them to their jobs upon graduation. (Hogan Cert. ¶ 2).

[8] Plaintiffs provide absolutely no support for this bald and conclusory claim. The clinic, in fact loses significant money for the School. (Hogan Cert. ¶ 4).

[9] Plaintiffs cite to a flier distributed by the School, advertising various services provided. Plaintiffs, however, do not provide any basis for asserting what prices are actually charged by the School. The School, in fact, offers several discounts to the advertised prices, thus, further reducing the actual price charged. (Hogan Cert. ¶ 3)

that the School only charge enough to recoup the cost of materials, with no mention of "recouping" the cost of labor. N.J.S.A. § 45:4B-3(h).

Cinelli and McConnell attended the School from 2011-2012. (Complaint ¶¶ 30, 31). While enrolled at the School, plaintiffs spent time in the clinic, as required by the regulations, and performed cosmetology services on members of the public. *Id.* While students, plaintiffs do not allege that they had any expectation of compensation.

On January 27, 2014, plaintiffs commenced this action by way of Complaint in the United States District Court, District of New Jersey. In their Complaint, plaintiffs allege that Defendants' failure to pay them for attending classes and participating in state required clinical activity, constitutes a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207 and New Jersey Wage and Hour Law ("NJWHL"). Plaintiffs' claims are primarily premised on the bald allegation that, despite the admittedly low fees charged to the public by the School for services performed by senior students, and the cost of staffing the clinic with experienced and licensed instructors, defendants somehow still earned a profit from the clinic's operations. Moreover, by virtue of that profit, and apparently for no other reason, the School is required by the FLSA and the NJWHL to compensate plaintiffs at the minimum wage.

## III.   LEGAL ARGUMENT

### A.   The Standard for a Motion to Dismiss

Rule 12(b)(6) authorizes the court to dismiss a complaint for failure to state a claim "where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." *White v. Williams*, 179 F. Supp. 2d 405, 417 (D.N.J. 2002). Although the Court is required to "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom," (*Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)), it need not "accept legal or unsupported conclusions, unwarranted inferences, or

sweeping legal conclusions cast in the form of factual allegations." *Kennilworth Partners L.P v. Cedant Corp.*, 59 F. Supp. 2d 417, 422 (D.N.J. 1999). To survive a motion to dismiss under the current law, a civil complaint must include "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted).

The Court must accept all of the complaint's well-pleaded factual allegations as true, but should disregard any legal conclusions or mere assertions "devoid of further factual enhancement." *Fowler*, 578 F.3d at 210 (emphasis added); *Dawson v. Frias*, 397 Fed. Appx. 739, 741 (3d Cir. 2010); *see also Bamigbade v. State Farm Mut. Auto. Ins. Co.*, 391 Fed. Appx. 131 (3d Cir. 2010) ("The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'") (*quoting Iqbal*, 556 U.S. at 678). Moreover, the Court must determine whether the *facts* alleged in the Complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Fowler*, *supra*, 578 F.3d at 211. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations omitted). The Court must "draw on its judicial experience and common sense" in analyzing plausibility. *Id.* If the Complaint does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and does not raise more than a "sheer possibility that a defendant has acted unlawfully," it warrants dismissal. *Id.* at 1949. In other words, "[a] complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible." *Fleisher v. Standard Ins. Co.*, 2011 U.S. Dist. LEXIS 46756 (D.N.J. May 2, 2011).

When ruling on a motion to dismiss, courts are not strictly limited to the four corners of the pleading. For example, a court may consider any exhibits referenced in, or attached to the Complaint, as well as consider matters of public record. *See In re Morgan Stanley Smith Barney, LLC Wage & Hour Litig.*, 2013 U.S. Dist. LEXIS 171194, *8-9 (D.N.J. Dec. 4, 2013) (*citing Banco Popular v. Ghandi*, 184 N.J. 161, 183 (2003) and *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir.), *cert. denied*, 543 U.S. 918 (2004)). A court may also consider an undisputedly authentic document that is attached as an exhibit to a motion to dismiss if the plaintiff's claims arise out of, or are based on, that document. *Pension Benefit Guar. Corp. v. White Consol. Indust., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994); *see also In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Here, as addressed below, plaintiffs' Complaint consists of nothing more than legal conclusions, formulaic recitations of the elements of their causes of action and bald assertions that they have been injured by the defendants' conduct. Plaintiffs have not pled any factual content from which the Court can even decipher the purported basis of their claims. Further, plaintiffs have not demonstrated any entitlement to relief for themselves or the putative class members is plausible. As such, plaintiffs' Complaint must be dismissed in its entirety.

**B.**    **Plaintiffs' Claims Fail Because They Have Not Pleaded Facts Sufficient to Establish that They are Employees Rather than Students.**

Plaintiffs' position that they were employees of the School and, therefore, entitled to receive minimum wage in accordance with the FLSA and NJWHL[10] cannot survive this motion to dismiss. Courts have held that "whether a particular situation is an employment relationship is a matter of law," and, as such, is an appropriate issue for a dispositive motion. *Solis v. Laurelbrook Sanitarium and School, Inc.*, 642 F.3d 518, 521-22 (6th Cir. 2011). In this instance, plaintiffs'

---

[10] Courts in the District of New Jersey customarily apply the same analysis to claims under the FLSA and NJWHL. *Shakib v. Back Bay Restaurant Group, Inc.*, 2011 U.S. Dist. LEXIS 112614, *3, n. 2 (D.N.J. Sept. 30, 2011); *see also Guenzel v. Mount Olive Bd. of Educ.*, 2011 U.S. Dist. LEXIS 132102, *18 (D.N.J. Nov. 16, 2011).

allegations, which lack any factual support, are not sufficient to establish an employment relationship and the Complaint must be dismissed.

      1.    <u>Plaintiffs cannot establish they are employees under the FLSA based on precedential case law.</u>

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Further, "to employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). The Supreme Court's decision in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947) governs the issue of whether students or trainees are employees under the FLSA. The Court held that

> the definition of 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. Otherwise, all students would be employees of the school or college they attend, and as such entitled to receive minimum wages . . . The [FLSA's] purpose as to wages was to ensure that every person <u>whose employment contemplated compensation</u> should not be compelled to sell his services for less than the prescribed minimum wage.

*Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). It is clear that the instant matter was not a relationship intended to be covered by the FLSA.

There is no allegation that plaintiffs contemplated receiving compensation when they enrolled in the School. Like students across the country, plaintiffs paid tuition and purchased books and materials as an investment in their future. There was no expectation of receiving payment for attending the School, and, therefore, their "services" do not fall within the scope of the FLSA. Moreover, the facts set forth in the Complaint create the precise situation the Court in *Walling* proscribed. In *Walling*, the Supreme Court previously anticipated, and squarely rejected the notion of, students filing frivolous claims seeking minimum wage for time spent while training and receiving an education. *Id.* Thus, to allow plaintiffs to proceed on their claims would disturb 65 years of precedent.

Further, in *Bobilin v. Board of Educ., State of Hawaii*, 403 F. Supp. 1095, 1107-08 (D. Haw. 1975), the District Court applied *Walling* and considered the "entire fabric" of the relationship between the students and the school in order to determine whether students were "employees." In considering the totality of circumstances, the Court ruled that the primary purpose of the students' activities was educational. Despite the economic benefit the school received, the District Court held that "it would be absurd for this Court to rule that any educational activity would be placed within the requirements of the FLSA simply because there may be an economic benefit to the institution involved." *Id; see also Lane v. Carolina Beauty Systems, Inc.*, 1992 U.S. Dist. LEXIS 15338 (M.D. North Car. July 2, 1992) (holding that, while the beauty school did derive some benefit from plaintiff's time as a teacher trainee, she was not an "employee" under the FLSA).

In analyzing the facts alleged here, it is clear that plaintiffs are not "employees" under the FLSA. Plaintiffs' time spent in the School's clinic is clearly for their own benefit, to provide them with the requisite hours to obtain a license as mandated by New Jersey law. Similar to *Bobilin, supra*, plaintiffs' sole argument appears to stem from the fact that the School charges clinical volunteers for haircuts. Plaintiffs assert that by charging an individual $10 for a haircut, the School suddenly ceases being an educational institution and becomes an employer, operating solely for its own benefit and not for the student. This argument deserves short shrift as state law requires students perform such clinical training to obtain a license and accreditation and allows for the recovery of money reasonably related to the costs of materials by charging patrons. Based on previous court rulings, it is clear that the School's receipt of some economic gain does not transform the educational institution into an employer.

2.   Plaintiffs are not employees based on factors set forth by the DOL that determine employment relationships.

As set forth above, it is clear plaintiffs' claims cannot survive a motion to dismiss based on the courts' analysis in determining an employee-employer relationship. Defendants anticipate that plaintiffs will attempt to defeat this motion by relying upon the non-precedential and non-binding guidelines of the Department of Labor. It is, however, clear that, regardless of which analysis this Court applies to the Complaint, plaintiffs' claims are insufficient and should be dismissed as a matter of law.

In 2001, the Department of Labor established six factors to be considered in determining whether a training program is exempt, and its participants not "employees."

- The training, even though it includes actual operation of the facilities of the employer, is similar to what would be given in a vocational school or academic educational instruction;

- The training is for the benefit of the trainees;

- The trainees do not displace regular employees, but work under their close observation;

- The employer that provides the training derives no immediate advantage from the activities of the trainees, and on occasion the employer's operations may actually be impeded;

- The trainees are not necessarily entitled to a job at the conclusion of the training period; and

- The employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

DOL Op. Letter, 2001 DOLWH LEXIS 10 (Jan. 30, 2001) ("2001 Opinion Letter"); 2004 DOL Op. Letter, 2004 DOLWH LEXIS 56 (Oct. 19, 2004) ("2004 Opinion Letter"); DOL Fact Sheet #71, April 2010, *available at* http://wdr.doleta.gov/directives/attach/TEGL/TEGL12-09acc.pdf ("Fact Sheet #71").

While the DOL Opinion Letters do not invalidate the previously analyzed case law, courts will look to the proposed factors for guidance in evaluating the existence of an employee/employer relationship. Though courts are split on the best way to apply the factors, many courts make the determination based on the "totality of circumstances," and look to the DOL's factors for guidance. *See, e.g., Solis, supra,* 642 F.3d at 521-22 (the Court determined that it was proper to consider the totality of circumstances in determining the existence of an employment relationship); *Wang v. The Hearst Corp.,* 293 F.R.D. 489 (S.D.N.Y. May 8, 2013) (holding that the proper approach is to view the situation as totality of circumstances, while considering six factors in making decision) (*citing to Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 (1985)); *Velez v. Sanchez,* 693 F.3d 308, 326 (2d Cir. 2012) ("whether an employer-employee relationship exists does not depend on isolated factors but rather upon the circumstances of the whole activity").

In reviewing the six factors set forth by the DOL, the totality of circumstances make clear that plaintiffs cannot establish an employee/employer relationship.

        a.    <u>Training is similar to what would be given in a vocational school or academic educational instruction.</u>

The first DOL factor favors defendants' position because the School, including its clinic, which is the subject of this litigation, actually <u>is an academic institution</u>. Therefore, the training plaintiffs received is not only "similar" to that which would be provided in an educational setting; it actually *is* the training one receives in an educational institution. Moreover, cosmetology vocational schools and private cosmetology schools are both bound by the Board's regulations and, therefore, their students must complete the same practical training requirements.

b.    Training is for the benefit of the students.

This second DOL factor is one on which plaintiffs rely.  They argue that because defendants charge a fee for services rendered to the public, the School necessarily reaps a profit, and therefore is an employer.  There is absolutely no basis for plaintiffs' position.

As stated above, plaintiffs cannot survive a motion to dismiss by merely pleading conclusory and baseless allegations.  *Iqbal*, 556 U.S. at 678.  Indeed, it is not sufficient that allegations be merely possible, rather they must be *plausible*.  *Fowler, supra,* 578 F.3d at 210.  As set forth in *Iqbal*, 556 U.S. at 678, courts must use common sense when determining the plausibility of a plaintiff's allegations.  The facts here are as follows:  the School must pay for utilities, purchase chemicals and products for the clinic and pay teachers to supervise and train senior students in the clinic.  The School advertises prices of $10 for a haircut, $30 for a perm, and $25 to have hair colored.  (Complaint, Exhibit A).   Plaintiffs admit that these prices are less than non-educational salons in the area. (Complaint, ¶ 60).  Applying common sense, it is not even remotely plausible that the "fees charged by defendants to the general public . . . greatly exceed the cost . . .." (Complaint, ¶ 47).  Plaintiffs have provided absolutely no factual basis for this bald allegation.  Defendants, in fact, submitted an affidavit that sets forth the actual losses suffered by the School's clinic, demonstrating there is no profit as plaintiffs' claim without any basis. (Hogan Cert., ¶ 4).

Even taking plaintiffs' conclusory statements as true, the facts demonstrate that the School clinic is for plaintiffs' benefit notwithstanding any imaginary profits earned.  The School clinic exists for the sole purpose of providing students with a place to obtain the requisite practical experience *as required by State law*.  Any benefit the School derives, if any, is secondary to the primary purpose of educating students.  *See Solis, supra,* 642 F.3d at 521-22 (The Court determined that the Sanitorium would not exist if the school did not exist; it existed solely to

provide a training opportunity for the students and any benefit to the school was secondary to education).  Therefore, the establishment of the School clinic is for the students' benefit. Plaintiffs' assert that without the students' "free labor," the School clinic "would either cease to operate, or defendants would have to hire and pay other persons to perform such services." (Complaint, ¶ 59).  Finally, plaintiffs are right, because without the students the School clinic *would* cease to exist since its sole purpose is to provide students the clinical training required by State law.  If defendants wanted to have a profitable salon without students, they would open a commercial salon, charge competitive prices, and advertise without the burden of notifying the public that "[a]ll work [is] performed by Senior Students . . ." The School and clinic exist, however, to provide an education.  It is true that the School is "for-profit," but any and all profits are mainly the result of tuition, not of the clinic's proceeds.

But for the practical training provided by the School, plaintiffs would be unable to obtain a license in accordance with New Jersey state law, and ultimately prohibited from practicing their chosen craft.

    c.  <u>The students do not displace regular employees, but work under their close observation.</u>

In accordance with State law, defendants' licensed instructors supervise and assist the students at all times in the School clinic.  Moreover, the students could not displace "regular" employees, because there are no "regular" employees; the clinic only employs instructors, whose job it is to teach and supervise students.   If the School and its students did not exist, the School clinic would not exist.  Therefore, there are no cosmetologists being displaced by the students and this factor is satisfied.

d.   The School derives no immediate advantage from the activities of the students, and on occasion operations may actually be impeded.

As set forth in factor 2, above, plaintiffs' baseless assertion that defendants make a "substantial profit" from the School clinic is without merit and should not be considered by the Court. Plaintiffs mistakenly believe that, simply because defendants may charge $10 for a student to cut hair for training purposes, the School, and not the students, received a benefit and, therefore, an employment relationship exists. Conversely, if the School only allowed students to cut wigs on mannequins, or did not charge the public any fee for services, would plaintiffs no longer claim to be employees, despite spending the exact same number of hours cutting hair in the clinic? Notably, a court has ruled on this issue, finding no distinction between training in "real world" situations, or spending time on simulated equipment. *Ulrich v. Alaska Airlines, Inc.*, 2009 U.S. LEXIS 10104 (W.D. Wa. Feb. 9, 2009) (The trainees who attended "in-flight" training sessions and assisted with on-board tasks were not distinguishable from trainees on simulated equipment).

Further, even if the School did receive some benefit, it does not necessarily mean that plaintiffs are automatically employees. *Woods v. Wills*, 400 F.Supp.2d 1145, 1166 (E.D. Mo. 2005) (It is not necessary for plaintiffs to be the sole beneficiaries, but the primary benefit must be to the students. Although the program and use of students may, to some extent, defray the costs to the school, the primary benefit is for the students; therefore, the activities were not "work" and the students were not "employees"); *Blair v. Wills,* 420 F.3d 823, 829 (8th Cir. 2005) (The court determined that the students' chores were "part of the educational curriculum" and while it helped defray costs, the totality of the circumstances clearly indicated that there was no employment relationship); *Kaplan v. Code Blue Billing & Coding, Inc.*, 504 Fed. Appx. 831 (11th Cir. 2013) (an individual is not an employee when he "works for his own advantage or personal purpose," such as receive hands-on training and experience, academic credit, and a degree). As in

16

these cases, the students here receive an obvious benefit.  This reality is not diminished if the School receives a benefit as well.

      e.    <u>The students are not necessarily entitled to a job upon graduation.</u>

The students attend school with the expectation that they will graduate, get a license and find employment in their chosen field.  There is no expectation or entitlement to a job with the School upon completion of their course work, especially since the School does not employ non-teaching cosmetologists. Notably, plaintiffs do not allege any such expectation in the Complaint.

      f.    <u>The School and the students understand that the students are not entitled to wages for time spent at the School.</u>

At the time relevant to this matter, plaintiffs could not have had any expectation of compensation.  Plaintiffs participated in clinical sessions in order to obtain their license, and there are no allegations in the Complaint that they had pre-existing expectations that they would be compensated by the very School to which they paid tuition.

Not only do defendants satisfy each of the six DOL factors (even while taking plaintiffs' allegations as true in their entirety), but considering the DOL factors and reviewing the totality of circumstances, it is clear that plaintiffs were never employees of the School.  In *Solis*, the Court determined that it was proper to consider the totality of circumstances, and applied a "primary benefit test," which allows for the consideration of all relevant factors.  *Id. (relying on Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (holding that the existence of an employment relationship is determined by "the circumstances of the whole activity" and not by "isolated factors."  Whether the Court follows the *Wallington* decision or applies the DOL factors, it is clear that plaintiffs' Complaint does not set forth facts sufficient support a cause of action against defendants.  Plaintiffs' Complaint should be dismissed because the School's derivation of some profit does not support the conclusion that its students somehow become employees entitled to

wages. Furthermore, even if plaintiffs' claims somehow had legal merit, their allegations regarding the clinic's profitability is wholly implausible and is not supported by the facts pled.

**C.** **Plaintiffs' NJWHL Claims Must be Dismissed**

      1.    Plaintiffs' claims under the NJWHL fail because New Jersey law defines an "employee."

New Jersey law and its administrative code set forth comprehensive regulatory schemes, which govern cosmetology and hairstylist schools. Thus, the relationship between the School and its students is created and regulated by State statute. New Jersey clearly anticipates that the time students spend in a clinic is for educational purposes and not for compensation. *See, e.g.* N.J.A.C. § 13:28-6.27(g), (h) (an instructor must always be present and responsible); N.J.S.A. § 45:5B-3(h) (clinics may only charge enough to recoup costs). It is, in fact, unlawful for a student to provide cosmetology services to the public without being supervised by a licensed cosmetologist in a controlled environment. N.J.A.C. § 13:28-6.27(b).

Any finding by this Court that the students are actually employees of the School would conflict with the rules and regulations promulgated by the State of New Jersey. The students pay tuition and attend class with the intention of obtaining a cosmetology license. Under state law, the students cannot obtain a cosmetology license without a requisite number of "practical" hours. Moreover, the students cannot engage in the practice of cosmetology unless enrolled in a licensed institution and under the direct supervision of trained instructors. Plaintiffs argue, however, that by following the rules and regulations of the State (which include the right for an institution to charge a reasonable fee to recoup the costs of materials) and allowing plaintiffs to obtain their required practical training, the School has somehow changed their status from student to employee. Of course, this argument is absurd.

2.     Plaintiffs' State law claims fail because there is no private cause of action.

As set forth at length above, plaintiffs fail to allege any facts sufficient to support their claims that defendants violated the NJWHL. Specifically, in order to maintain its license, the School must abide by the Act and its corresponding regulations. In doing so, the School clinic only charges enough to recoup costs and students are properly supervised and trained. If the School is in compliance with the Act (which it is), there can be no facts to support plaintiffs' theory that they were employees. Therefore, plaintiffs' Complaint is really alleging that the School is not in compliance with the Act and, therefore, is in violation of the NJWHL. Notably, the Court cannot determine a violation of the NJWHL without first finding that the School is in violation of the Act.

The issue of whether the School is in compliance of the Act is not properly before this Court. The Board and the State Attorney General have the sole responsibility of investigating schools, hearing complaints and enforcing the Act. N.J.S.A. § 45:1-25. By bringing this claim, plaintiffs attempt to circumvent the Board's authority, despite no support for doing so. *See, e.g. R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 274 (N.J. 2001) ("New Jersey courts have generally declined to infer a private right of action in statutes where the statutory scheme contains civil penalty provisions."). As a result, plaintiffs lack standing to bring this claim and it must be dismissed as a matter of law.

**D.     Plaintiffs' Claims as to Ms. Hogan Must be Dismissed.**

Plaintiffs' claims against Ms. Hogan must be dismissed because the Complaint lacks sufficient facts to support their claim. "Critically, in pleading a cause of action under the FLSA, plaintiffs must establish an employer-employee relationship with the named defendants." *Thompson v. Real Estate Mortg. Network, Inc.*, 2011 U.S. Dist. LEXIS 149774, at *8 (D.N.J. Dec. 30, 2011) (internal citation omitted). The FLSA defines an "employer" as "any person

acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Further, an "employee" is defined as "any individual employed by an employer" by the Act.  29 U.S.C. § 203(e)(1).

The FLSA's broad definition of employer may encompass a "corporate officer with operational control," and result in the joint and several liability of that "employer" in their individual capacity.  *Dole v. Haulaway Inc.*, 723 F. Supp. 274, 286-87 (D.N.J. 1989) (*citing Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984)).  "However, there are limitations; in order to find liability under this section an individual defendant must have 'supervisory authority over the complaining employee' *and* must be 'responsible in whole or in part for the alleged violation.'"  *Sandom v. Travelers Mortg. Servs., Inc.*, 752 F. Supp. 1240, 1251 (D.N.J. 1990) (*quoting Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)) (discussing 29 U.S.C. § 203(d) with respect to an Equal Pay Act claim) (emphasis added).  Courts will look to factors such as whether the individual "actually exercised day to day control over the affairs of the corporate defendant including approving promotions and raises, hiring and discharging employees, and establishing other terms and conditions of employment" in determining whether an employment relationship exists.  *Dole*, 723 F. Supp. at 287.

The Complaint must be dismissed as to Ms. Hogan because plaintiffs fail to allege sufficient facts to establish that Ms. Hogan was their "employer," and as such, could be subject to potential individual liability under the Act.  The Complaint does not provide sufficient detail to set forth a plausible claim for relief.  Rather, as set forth above, plaintiffs allege that Ms. Hogan "created the policies and procedures described herein" and that she "personally participated in the unlawful practices."  (Complaint ¶¶ 12, 14).  Such "threadbare recitals" of the causes of action and "conclusory statements" concerning Ms. Hogan are not sufficient to state a plausible cause

for relief. *Iqbal*, 129 S. Ct. at 1949-50. A complaint cannot survive a motion to dismiss when it is "utterly devoid of specific factual allegations supporting any of these conclusory statements." *Maradiaga v. A. Duie Pyle*, 2012 U.S. Dist. LEXIS 103487, *2 (D.N.J. July 25, 2012). Further, a complaint that does not "allege any specific facts connecting [the plaintiffs'] employment to each defendant" must be dismissed as "[w]ithout such specific facts, both the Court and defendants are unable to determine the extent to which any of the named defendants could be liable." *Thompson*, 2011 U.S. Dist. LEXIS 149774, at *9. Therefore, the Court should dismiss plaintiffs' Complaint as to Ms. Hogan for the failure to state a claim upon which relief can be granted.

## IV.    CONCLUSION

Plaintiffs' Complaint should be dismissed as a matter of law because the School's derivation of some profit (which allegations are wholly unsupported and without merit) does not support the conclusion that its students somehow become employees entitled to wages. Moreover, plaintiffs' lack standing to bring claims under State law, and any complaints or allegations should be brought to the Board. Additionally, plaintiff's Complaint fails to allege facts sufficient to support a cause of action as to Ms. Hogan, and all claims as to her must be dismissed.


Dated: April 8, 2014

*/s/ Lauren J. Marcus*
_____
Lauren Jill Marcus
LITTLER MENDELSON, P.C.
Attorneys for Defendants

21