# Attachment A
# July 30, 2014 Opinion in
# Jochim v. Jean Madeline, et al

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOGUMILA JOCHIM | : | CIVIL ACTION |
| v. | : | |
| JEAN MADELINE EDUCATION CENTER OF COSMETOLOGY, INC., et al. | : | NO. 13-6564 |

ORDER

AND NOW, this 30th day of July, 2014, upon consideration of plaintiff Bogumila Jochim's complaint, the defendants' motion to dismiss, her response thereto, and the defendants' reply to that response, and the Court finding that:

(a) Bogumila Jochim brings this action on behalf of herself and other beauty school students, alleging that defendants Jean Madeline Education Center of Cosmetology, Inc., d/b/a "The Jean Madeline Aveda Institute" ("the Aveda Institute"); Jean Madeline, Inc. ("JMI"); and Samuel Lehman violated federal and state wage laws by requiring students at the center to work without compensation;

(b) She brings claims under the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 206 et seq. (Count I); the Pennsylvania Wage Payment and Collection Law ("the WPCL"), 43 Pa. Cons. Stat. Ann. § 260.1 et seq. (Count II); and the Pennsylvania Minimum Wage Act ("the MWA"), 43 Pa. Cons. Stat. Ann. § 333.101 et seq. (Count III);[1]

(c) We have jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331, and we have supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a);

---

[1] The Fair Labor Standards Act (FLSA) allows for collective actions pursuant to 29 U.S.C. § 216(b). Unlike Fed. R. Civ. P. 23, § 216(b) requires class members to opt in. The defendants' motion to dismiss concerns the sufficiency of Jochim's allegations about the circumstances of her employment, and so we consider those claims here, and we will entertain a motion for conditional certification separately.

(d) The defendants move to dismiss the entire complaint pursuant to Fed. R. Civ. P. 12(b)(6);

(e) They argue that we must dismiss the action because (1) Jochim fails to plead an employment relationship with any defendant, as is necessary to sustain a claim under the FLSA and the MWA; (2) Jochim fails adequately to plead the she was an employee as is necessary to sustain a claim under the FLSA and the MWA; (3) she fails to state a claim under the WPCL because she does not allege the existence of an agreement by any defendant to pay her wages; (4) she fails to state a claim against JMI because the complaint contains "not so much as a single fact" regarding JMI, Def. MTD at 3; and (5) she fails to allege that Lehman is liable for any failure to pay wages by the Aveda Institute;

(f) We consider each argument in turn;

(g) A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief, see Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005);

(h) As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'", Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570);

(i) A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", Iqbal, 556 U.S. at 678;

2

(j) As our Court of Appeals has explained post-<u>Twombly</u> and <u>Iqbal</u>, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the district courts must engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009);

(k) We thus begin by reciting the facts as they appear in Jochim's complaint.

(l) Jochim alleges that the Aveda Institute is a for-profit corporation that earns annual revenue in excess of $500,000, and her work there involves the use or handling of goods involved in interstate commerce, <u>see</u> Comp. ¶ 6;

(m) The complaint further alleges that Lehman is the managing officer, owner, and principal of the Aveda Institute, and that he "created the policies and procedures described" in the complaint, <u>id.</u> at ¶¶ 10 - 12;

(n) According to the complaint, "Lehman, by virtue of his ownership and/or control of the other defendants, could have, but did not, make the decision to have the Jean Madeline Aveda Institute discontinue the unlawful practices alleged herein", <u>id.</u> at ¶ 72;

(o) With regard to Jean Madeline, Inc., the section of the complaint labeled "Parties" does not mention that entity;

(p) Instead, in what appears to be a mistake, paragraphs 10 and 11 of the complaint are identical and both refer only to "Defendant Jean Madeline Educations Center of Cosmetology, Inc. d/b/a/ Jean Madeline Aveda Institute";

(q) According to the complaint, the for-profit activities of the Aveda Institute fall into two categories -- their "educational services business" activities involve "providing educational services . . . to paying students in the cosmetological trades" by "training such students to practice the trades", while their "salon personal services business" activities involve "providing . . . personal services to the general public at several beauty salons" the defendants own in Pennsylvania, "where members of the public pay a fee to defendants to receive cosmetology, barbering, esthetics or skin care, makeup artistry or manicuring services", Comp. ¶ 39;

(r) The complaint alleges that students "who have also purchased the educational services provided by the defendants" perform the work necessary for the salon personal services business, and that these students provided "exclusively or predominately" the labor needed to run the salon personal services business, see Comp. ¶¶ 43, 45;

(s) Jochim also alleges that she and other students were "paid no compensation by defendants for the labor they provide in defendants' salons", id. at ¶ 44;

(t) She also contends that "[t]he revenue defendants receive from the fees paid by members of the general public for salon personal services at defendants' salons exceeds the value of the materials, if any, that such members of the public consume during the receipt of such services", id. at ¶ 42;

(u) The complaint alleges that the defendants "actively promote and advertise their salon personal services business to the public" and that they "compete[] with other profit-making businesses that provide the same salon personal services by charging members of the public lower fees for such salon services", id. at ¶ 47;

(v)     Defendants are able to compete in this way, Jochim contends, because they do not pay those who are performing the work, id. at ¶ 50;

(w)     According to the complaint, "[t]he relationship between the defendants and the putative collective action members and class members . . . is one of employer and employee for the purposes of the FLSA and Pennsylvania state law", id. at ¶ 68;

(x)     Jochim does not state specifically when she worked for the defendants, saying only that she seeks to bring this action on behalf of herself and all others who "are or were students at defendants' beauty school" from November 8, 2011 to the present, id. at ¶¶ 3-4;

(y)     She says that she and others were required to perform work including "manual labor or administrative functions including, but not limited to, janitorial, clerical or logistical functions", id. at ¶ 69d;

(z)     She argues that the relationship to defendants was not merely educational because "[t]he defendants' educational services business neither requires, nor benefits, from the defendants' decision to charge members of the public a fee for providing salon personal services that is high enough to generate a profit for defendants", id. at ¶ 60;

(aa)    Moreover, she alleges that the work described in the paragraph above "did not, and could not, confer any educational or occupational benefit whatsoever upon such collective action/class members", id. at ¶ 69d;

(bb)    We turn now to the FLSA, the substantive law governing Jochim's claim;

(cc)    As the Supreme Court has explained, "[t]he principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours" and to ensure that each employee covered by the Act received "a fair day's pay for a fair day's work", Barrentine v. Arkansas-Best

Freight System, Inc., 450 U.S. 728, 739 (1981) (quoting Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 578 (1942)) (internal alterations omitted); see also, e.g., Christopher v. SmithKline Beecham Corp., -- U.S. --, 132 S. Ct. 2156, 2162 (2012) (quoting Barrentine for this proposition);

(dd) Under the FLSA, "every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is engaged in an enterprise engaged in commerce . . . wages" at a rate of $7.25 per hour, 29 U.S.C. § 206(a); see also, e.g., Citicorp Indus. Credit, Inc. v. Brock, 483 U.S. 27, 32-33 (1987);

(ee) Thus, in order to state a claim for a minimum wage violation under FLSA, a plaintiff must show that (1) there is an employment relationship between a covered employer and a covered employee; (2) either the employee individually or the enterprise for which she works was engaged in interstate commerce, and (3) the employer failed to pay the employee a minimum wage, see, e.g., Scott v. Bimbo Bakeries, USA, Inc., No. 10-3154, 2012 WL 645905, at *2 (E.D. Pa. Feb. 29, 2012) (Goldberg, J.);

(ff) The Act defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee", 29 U.S.C. § 203(d);

(gg) As our Court of Appeals has explained, under the regulations implementing the Act, an employee may have multiple employers because an employment relationship exists where "the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer", In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig., 683 F.3d 462, 467 (3d Cir. 2012) (quoting 29 C.F.R. § 791.2(b));

(hh) As a result, a "single individual may stand in the relation of an employee to two or more employers at the same time", id. (quoting 29 C.F.R. § 791.2(a)), and several entities and individuals "may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer", 29 C.F.R. § 791.2(b);

(ii) The Act defines "employ" as "to suffer or permit to work" and "employee" as "any individual employed by an employer", 29 U.S.C. §§ 203(g), (e);

(jj) In determining if a plaintiff qualifies as an employee under the Act, "economic reality rather than technical concepts is to be the test of employment", Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961);

(kk) The Supreme Court has noted that the FLSA definition of employee is "exceedingly broad", Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 295 (1985), describing it as "the broadest definition that has ever been included in any one act", United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945); see also, e.g., Martin v. Selker Bros., Inc., 949 F.2d 1286, 1293 (3d Cir. 1991) ("The statutory definitions regarding employment status are necessarily broad to effectuate the remedial purposes of the Act.");

(ll) The Act defines "enterprise[s] engaged in commerce", as "enterprise[s] whose annual gross volume of sales made or business done is not less than $500,000", id. at § 203(s)(1);

(mm) The Pennsylvania MWA parallels the FLSA, and we apply the same standards in considering claims brought under the Acts, see, e.g., Baum v. Astrazeneca LP, 372 Fed. Appx. 246, 248-49 (3d Cir. 2010); Alers v. City of Philadelphia, 919 F. Supp. 2d 528, 560 (E.D. Pa. 2013) (Jones, J.);

(nn)   Here, the defendants raise two primary arguments for dismissal of the FLSA and MWA claims: they contend that (1) Jochim's complaint is insufficiently specific, and (2) she has alleged only a student relationship, rather than an employment relationship;

(oo)   We will thus consider first the argument that the complaint is insufficiently specific, and because we find that with respect to defendant Jean Madeline Education Center of Cosmetology, Inc., the complaint is specific enough to survive a Rule 12(b)(6) motion, we will next consider whether Jochim's status as a student prevents her from making a claim under the FLSA and the MWA as to the that defendant;

(pp)   The defendants cite nine alleged insufficiencies;

(qq)   First, they argue that Jochim fails to allege facts relating to any one defendant, referring instead to "defendants", Def. MTD at 9;

(rr)   As an example, they note that "Plaintiff never alleges which Defendant required her to perform the services that allegedly constituted compensable work", id.;

(ss)   Next, they contend that Jochim "fails to allege a single fact regarding the location(s) at which she performed the services for which she contends she should have been paid", id.;

(tt)   They then claim that Jochim failed to provide any "supporting facts" for the allegation that "the School charg[ed] more for the salon services provided by the students to the public than the cost of the materials used in those services", id. at 11;

(uu)   Finally, they contend that the plaintiff failed to allege "facts regarding the amounts charged by the School for the services; the specific services provided; the dates on which Plaintiff provided the services; how long it took to provide the services; where Plaintiff

provided the services; the materials used in providing the services; or the cost of the materials used in providing the services", id. at 12;

(vv)    The plaintiff responds that defendants "demand a level of heightened factual specificity unknown to FLSA or the federal rules", Pl. Resp. at 2, and that in fact "the level of factual detail needed to adequately plead FLSA wage claims is far less than what Defendants' motion argues", id. at 4;

(ww)    Jochim argues that "Twombly merely requires that a plaintiff plead sufficient facts relating to the essential elements of a claim . . . to state a claim that rises above the level of speculation", id. at 7;

(xx)    We will consider each argument of insufficient specificity in turn;

(yy)    Twombly restated the Rule 8(a)(2) requirement that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests", Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957));

(zz)    In order to show that she is entitled to relief, a plaintiff must allege sufficient facts to "raise a right to relief above the speculative level", id., and to the level of plausibility;

(aaa)    As we rehearsed above, a claim is plausible where the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", Iqbal, 556 U.S. at 678;

(bbb)    Jochim alleges that she worked without pay at a salon run by the Jean Madeline Education Center of Cosmetology, Inc., owned by defendant Samuel Lehman;

9

(ccc)     We address the sufficiency of the allegations against Lehman below, but a reasonable inference from Jochim's stated facts is that Jean Madeline Education Center of Cosmetology, Inc. is liable for non-payment, notwithstanding Jochim's reference to the employers collectively rather than individually;[2]

(ddd)     With regard to the location of the work, Jochim alleges that Jean Madeline Aveda Institute has a principal place of business at 417 North 8th Street, Suite 4000, Philadelphia, Pennsylvania, Comp. at ¶ 10, and she alleges that the students "were required to perform labor without pay . . . in one of the for-profit beauty salons operated by defendants in Pennsylvania, working under uniform policies and procedures created by defendants", id. at ¶ 18;

(eee)     This is sufficient detail to state a claim;

(fff)     With regard to the inference of liability, since the FLSA and the MWA apply throughout Pennsylvania, further detail about the salons' locations within Pennsylvania would not change the potential for liability under the Acts;

(ggg)     From a notice standpoint, because the defendants know at which locations they have students perform without pay the services Jochim describes, the complaint puts the defendants on notice of the allegations against them;

(hhh)     We turn to the defendants' complaint that the statement that "the School charg[ed] more for the salon services provided by the students to the public than the cost of the materials used in those services" lacks factual support;

(iii)     We note first that the statement is itself a factual allegation;

---

[2] The defendants' reliance on Davis v. Abington Memorial Hospital, 817 F. Supp. 2d 556 (E.D. Pa. 2011) (Rufe, J.) does not convince us otherwise. In that case, the plaintiffs brought a claim against a group of alleged employers that numbered somewhere between 66 and 218. Id. at 563. The Court found that plaintiffs did not allege basic information that would allow the Court to identify which of these entities acted as plaintiffs' employer. Id. That is a far cry from the situation before us, where Jochim alleges that she worked at a salon, The Jean Madeline Aveda Institute, run by two corporate defendants and an individual owner. See Comp. ¶¶ 10-12, 39.

10

(jjj)   With respect to the "supporting facts" defendants call for -- "the amounts charged by the School for the services; the specific services provided; the dates on which Plaintiff provided the services; how long it took to provide the services; where Plaintiff provided the services; the materials used in providing the services; or the cost of the materials used in providing the services", Def. MTD at 12 -- courts have not required this degree of factual specificity at the pleading stage;

(kkk)   For example, in Harris v. Scriptfleet, Inc., No. 11-4561, 2011 WL 6072020 (D.N.J. Dec. 6, 2011), the defendant argued that the court should dismiss the complaint because the plaintiff had omitted a much more pertinent detail, "a specific estimate of how many hours he worked for which he was either under- or uncompensated for", Harris, 2011 WL 6072020, at *3;[3]

(lll)   The court rejected this argument, finding that FLSA requires employers to keep records of employees' wages and hours, and it cited approvingly a case in which the Northern District of California found that "where plaintiff alleged the dates of his employment, described his job responsibilities sufficiently for the court to infer that he was correct in his description of his position as nonexempt, and generally alleged [a] failure of the defendant to pay overtime wages, his complaint would survive dismissal", id. (citing Acho v. Cort, No. 09-157, 2009 WL 3562472 (N.D. Cal. Oct. 27, 2009));

(mmm) Harris reasoned that "[u]nlike the complex antitrust scheme at issue in Twombly that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite simple and straightforward", id. at *2 (citing Sec'y of Labor v. Labbe, 319 Fed. Appx. 761, 763 (11th Cir. 2008));

---

[3] We note that Jochim also failed to include such an estimate here, but like Judge Chesler in Harris, we do not find this fatal to her claim.

11

(nnn)   The court concluded that where the plaintiff alleged that his employer required him to work in excess of forty hours a week, did not compensate him for overtime, and deducted expenses from his paycheck that drove his wage below the minimum wage, the plaintiff had stated a claim sufficient to survive a Rule 12(b)(6) motion, id. at *3;

(ooo)   Similarly, in Sanchez v. Haltz Construction, Inc., No. 09 C 7531, 2012 WL 13514 (N.D. Ill. Jan. 4, 2012), the district court explained that "wage cases generally[] are not so complicated that they require significant factual allegations 'to present a story that holds together.'" Sanchez, 2012 WL 13514, at *3;

(ppp)   The court found that where "[p]laintiffs allege that they 'routinely' worked more than 40 hours per week without receiving overtime pay, and that the amount of compensation they did receive for the work they performed fell below the minimum-wage requirement", they did not "need to provide more factual detail in order to state a claim that is 'plausible' in the relevant sense", id.;

(qqq)   In Thompson v. Real Estate Mortg. Network, 748 F.3d 142 (3d Cir. 2014), our Court of Appeals confirmed that a FLSA complaint will survive a motion to dismiss under Rule 12(b)(6) where it "put[s] the corporate defendants on fair notice [of] the alleged violations", id. at 148;

(rrr)   We find that, reading the complaint in light of "judicial experience and common sense", Iqbal, 556 U.S. at 679, Jochim has included sufficient detail to state a plausible claim for relief with regard to the Jean Madeline Education Center of Cosmetology, Inc.;

(sss)   We next consider the defendants' contention that we must dismiss the complaint because Jochim is a student rather than an employee;

12

(ttt)   This argument has not been fully briefed by either party, and the record is not developed on this point, but we find that at this juncture Jochim's student status is not a ground for dismissal;

(uuu)   The FLSA contains a provision for "student-learners", which the statute defines as "a student who is at least sixteen years of age . . . who is receiving instruction in an accredited school . . . and who is employed by an establishment on a part-time basis, pursuant to a bona fide vocational training program", 29 C.F.R. § 520.300;

(vvv)   The regulations provide that "[t]he special minimum wage rate paid to student-learners shall be not less than 75 percent of the applicable" minimum wage, id. at § 520.506;

(www)  It is not clear at this point whether Jochim and other members of the putative class would qualify as student-workers under this definition, but it is clear that work performed pursuant to vocational training is not per se excluded from the FLSA's coverage;

(xxx)   The Pennsylvania Beauty Culture Law, 63 Pa. Stat. Ann. § 508, which the defendants cite, also does not require dismissal;

(yyy)   That law prohibits, inter alia, unlicensed "practice[ing] or teach[ing] cosmetology for compensation" or "practice[ing] or teach[ing] esthetics, natural hair braiding or nail technology for compensation",[4] but it does not prohibit unlicensed janitorial or clerical work, which is among the work Jochim alleges she was obliged to perform without compensation;

(zzz)   We will therefore not dismiss the complaint on this basis;

---

[4] Courts have not had occasion to entertain the scope of the "nail technology" provision, and we will avoid putting our unmanicured thumb on the scale until the record is more fully developed on this point.

(aaaa) With respect to Lehman, the defendants argue that Jochim has failed to allege any facts to show that he was an employer under the Act because they have failed to allege "facts that would establish that Lehman: had the power to 'hire and fire' anyone, much less the students; supervised and controlled student schedules and conditions; maintained employment, or any other, records; or undertook any managerial responsibilities with respect to the School", Def. MTD at 16;

(bbbb) The defendants also contend that Jochim has failed to allege sufficient facts to show JMI's liability because she has "not pleaded a single fact as to JMI", id. at 15;

(cccc) With regard to Samuel Lehman, our Court of Appeals discussed the standard for FLSA individual liability recently in Thompson;

(dddd) The Court explained that one may be liable as a FLSA employer if he "has adequate authority over the complaining employee when the supervisor independently exercises control over the work situation", Thompson, 748 F.3d at 153 (quoting Haybarger v. Lawrence County Adult Prob. & Parole, 667 F.3d 408, 417 (3d Cir. 2012)) (further internal quotations and alterations omitted);

(eeee) In Thompson, our Court of Appeals found that the plaintiff had sufficiently pleaded such control where she had alleged that the individual defendants "made decisions concerning Security Atlantic's and REMN's day-to-day operations, hiring, firing, promotions, personnel matters, work schedules, pay policies, and compensation", id. at 154; had consulted with the plaintiff's immediate supervisor over employment issues, id.; and where one of the individual defendants had said that he did no pay overtime to employees of plaintiff's designation, id.;

14

(ffff) Similar facts suggesting day-to-day control of employment operations are entirely missing from Jochim's complaint;

(gggg) The gist of Jochim's factual allegations about Lehman is that he "personally participated in the unlawful practices alleged herein", "knew of, created and approved of the practices", and "shared in the proceeds of the unlawful practices", Comp. ¶ 14, see also Comp. ¶¶ 70-85;

(hhhh) These allegations are insufficient to give rise to the inference that Lehman independently controlled the day to day operations at the salon, and so we will dismiss the claim against him without prejudice;[5]

(iiii) Similarly, with respect to Jean Madeline, Inc., the plaintiff makes no mention of it in the complaint;

(jjjj) This absence of factual allegations is clearly insufficient to give rise to an inference that Jean Madeline, Inc. has violated the FLSA and the MWA;

(kkkk) We will therefore also dismiss without prejudice the claim against Jean Madeline, Inc.;

(llll) The defendants argue that we should dismiss Count II of Jochim's complaint -- her WPCL claim -- because a claim under the WPCL requires a contract for payment, and she has not alleged the existence of any such contract, see Def. MTD at 13 (citing Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997) for the proposition that the WPCL "provides employees a statutory remedy to recover wages and other benefits that are contractually owed to them");

---

[5] As to the claims against defendants Lehman and Jean Madeline, Inc., the defendants seek only dismissal without prejudice. See, e.g., Def. MTD at 20. As the plaintiff correctly notes, our Court of Appeals requires dismissal without prejudice when a court dismisses a complaint for insufficiently specific allegations. See, e.g., Ross v. Meagan, 638 F.2d 646, 650 (3d Cir. 1981) (overruled on other grounds by Neitzke v. Williams, 490 U.S. 319, 328 (1989)).

(mmmm) As Judge Rambo succinctly explained, "a prerequisite for relief under the WPCL is a contract between employee and employer that sets forth their agreement on wages to be paid", Lehman v. Legg Mason, Inc., 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007), see also, e.g., Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990) ("WPCL does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.");

(nnnn) Jochim appears to concede the point -- in her response to the defendants' motion to dismiss, she acknowledges that "a claim under the Pennsylvania WPCL requires a contract of employment", Pl. Resp. at 20, and she does not argue that any such contract existed here;

(oooo) As such, we will dismiss with prejudice Count II, the WPCL claim;[6] and It is hereby ORDERED that:

1. Defendants' motion to dismiss (docket entry # 12) is GRANTED IN PART and DENIED IN PART, as follows:

   a. Count II of the plaintiff's complaint is DISMISSED WITH PREJUDICE;

   b. Counts I and III are DISMISSED WITHOUT PREJUDICE with respect to defendants Jean Madeline, Inc. and Samuel Lehman;

   c. In all other respects, the motion is DENIED;

2. If plaintiff wishes to file an amended complaint with respect to defendants Jean Madeline, Inc. and Samuel Lehman, she shall do so by noon on August 20, 2014; and

---

[6] A complaint that affirmatively demonstrates that the plaintiff is not entitled to relief is properly dismissed with prejudice. See, e.g., Ross, 638 F.2d at 648-49.

16

3. Further scheduling shall ABIDE the responsive pleadings to the complaint or the amended complaint, if plaintiff files one.

BY THE COURT:

/s/ Stewart Dalzell, J.